**GOVERNMENT OF the VIRGIN ISLANDS**

**v.**

**FORTE, Frederick, Appellant.**

**No. 88–3323.**

United States Court of Appeals, Third Circuit.

Argued Dec. 6, 1988.
Decided Jan. 6, 1989.

intended to exclude taxpayers' separation allow-

ances from income taxation.

Joel Hirschhorn, Andrew Cotzin (argued), Joel Hirschhorn, P.A., Miami, Fla., Michael A. Joseph, Law Offices of Michael A. Joseph, Christiansted, St. Croix, U.S. V.I., for appellant.

James S. Carroll, III (argued), Office of U.S. Atty., Charlotte Amalie, St. Thomas, U.S. V.I., for appellee.

Before GREENBERG, SCIRICA, and WEIS, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter is before this court on appeal by movant Frederick R. Forte from an or-

der entered on April 12, 1988 in the District Court of the Virgin Islands denying his motion under 28 U.S.C. § 2255 seeking relief from his conviction and sentence because his trial attorney was ineffective. We have already affirmed Forte's conviction on his direct appeal and thus the facts need only be summarized and the procedural history updated. *Government of the Virgin Islands v. Forte,* 806 F.2d 73 (3d Cir.1986).

Forte, a white male from the United States mainland, was convicted in the District Court of the Virgin Islands at a jury trial of rape of Petula Stephens, a black female from the Virgin Islands, and related offenses. 806 F.2d at 74–75. At the trial the prosecutor, without objection of Forte's attorney, used her peremptory challenges to excuse all or almost all of the white jurors called. 806 F.2d 76 n. 1. Following the trial, the Supreme Court decided *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and held that on the basis of the Equal Protection Clause of the Fourteenth Amendment prosecutors may not use peremptory challenges in a criminal case to exclude members of a defendant's race for racial reasons. The Court established procedures to be followed in trial courts for consideration of objections by defendants to peremptory challenges made on an allegedly racial basis. These procedures require the prosecutor, when a defendant makes a prima facie case of purposeful discrimination in the selection of the jury solely on evidence concerning the prosecutor's exercise of peremptory challenges, to explain why members of the defendant's race have been excused. The trial judge then has the duty to determine if the defendant has established purposeful discrimination. 476 U.S. at 97–98, 106 S.Ct. at 1723–24.

Notwithstanding his attorney's failure to object to the prosecutor's challenges to the jury at trial, Forte on his direct appeal contended that the judgment of conviction should be vacated because the government's exercise of its peremptory challenges to remove all white persons from the jury was plain error under *Batson.* Alternatively, he urged that his trial attor-

ney's failure to challenge the government's exercise of peremptory challenges denied him effective assistance of counsel entitling him to a remand. 806 F.2d at 74. We held that the *Batson* equal protection analysis was not triggered because Forte had failed to preserve his objections and because we did not find plain error in the trial proceedings. We further held that Forte could raise his contention regarding the ineffectiveness of his attorney only in a collateral proceeding under 28 U.S.C. § 2255. 806 F.2d at 77–78. In response on November 27, 1987 Forte initiated the proceedings under 28 U.S.C. § 2255 leading to this appeal.

In his moving papers Forte set forth that prior to the trial he had retained Alan Ellis, an attorney from Philadelphia, Pennsylvania, to consult with his Virgin Islands trial counsel. Ellis advised the trial counsel that *Batson* was then pending in the Supreme Court and instructed her to object if the prosecutor used her peremptory challenges to strike prospective white jurors. Forte further set forth that he, too, instructed the trial attorney to object to the challenge of the white jurors on the basis of *Batson.* Nevertheless at trial she did not object when the prosecutor excused the white jurors. The trial attorney later explained that she had not objected as she was " 'too embarrassed' to do so."

Forte attached a letter from Ellis to his new attorney which substantiated his claim. In the letter Ellis explained that prior to the trial he discussed the jury composition with the trial attorney who said that the prosecutor would attempt to get an all black jury as the complainant was black and to achieve this end would use peremptory challenges to remove the white jurors. Ellis said he advised the attorney of *Batson.* The trial attorney indicated to Ellis that she would object when the prosecutor used peremptory challenges to excuse white jurors. After the conviction Ellis returned to the Virgin Islands and discussed the case with the trial attorney who confirmed that the prosecutor had used her challenges to excuse the white jurors and she had not objected. The trial

attorney, according to Ellis, attributed her failure to object to the fact "that she was *too* embarrassed inasmuch as she, herself, used her peremptory challenges in prior cases to exclude Whites from a Black defendant's jury."

Forte's motion was referred to the trial judge who decided the matter by an order dated April 12, 1988. He disposed of Forte's contention that the trial attorney had been ineffective in not objecting to the peremptory challenges by indicating that "[d]espite the composition of the jury, the court did everything within its power to eliminate any possible bias" and by quoting from our opinion at 806 F.2d at 76 with respect to the jury selection. The judge did not require the United States Attorney to file an answer or other pleading and no hearing was held on the motion. The judge must have therefore concluded from the face of the motion with the exhibits and the prior proceedings that Forte was not entitled to relief. This appeal, in which Forte seeks the vacation of his conviction and sentence or a remand for evidentiary hearing on his motion, followed.[1]

When a motion is made under 28 U.S.C. § 2255 the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief. *Government of the Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984). Accordingly, we review this matter to determine if the trial court abused its discretion in not ordering a hearing.

Forte's contention that he is entitled to relief only indirectly implicates *Batson* as we are concerned with the trial attorney's performance and not simply whether there was a *Batson* violation. Under the Sixth Amendment a defendant has the right to effective assistance of counsel which means that he is entitled to adequate representation by an attorney of reasonable competence. *Government of the Virgin Islands v. Zepp*, 748 F.2d 125, 131 (3d Cir.1984).

To establish that his representation was constitutionally inadequate a defendant must prove that his attorney's performance was unreasonable under prevailing professional standards and that this performance prejudiced the defense, *i.e.*, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Diggs v. Owens*, 833 F.2d 439, 444–45 (3d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1277, 99 L.Ed.2d 488 (1988). Only in a rare case can an attorney's performance be considered unreasonable under prevailing professional standards when she does not make an objection which could not be sustained on the basis of the existing law as there is no general duty on the part of defense counsel to anticipate changes in the law. *Morse v. Texas*, 691 F.2d 770, 772 n. 2 (5th Cir.1982). Thus, it has been held that an attorney at a trial before *Batson* was not ineffective for failing to raise a *Batson* type objection because *Batson* was an explicit and substantial break with the prior precedent of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), which it partially overruled. *Poole v. United States*, 832 F.2d 561, 565 (11th Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 54, 102 L.Ed.2d 33 (1988). *See also Easter v. Estelle*, 609 F.2d 756, 759–60 (5th Cir.1980).

■ Here, however, there are unique circumstances which, taking Forte's averments as true, lead us to conclude that his trial attorney's failure to object to the prosecutor's use of peremptory challenges was unreasonable under prevailing standards. The direction by Forte and Ellis prior to the

---

1. Forte's motion raised other grounds for relief which were rejected by the judge but as Forte does not rely on them on this appeal we do not set them forth.

trial to preserve the *Batson* issue was hardly unreasonable as making a *Batson* objection would have required little effort and would not have been a reprehensible or unprofessional act. Indeed, *Batson*-like objections were being made at the time in other cases, including in the Virgin Islands itself. *See, e.g., United States v. Canel,* 569 F.Supp. 926, 932–33 (D.V.I.1982), *aff'd,* 708 F.2d 894 (3d Cir.), *cert. denied,* 464 U.S. 852, 104 S.Ct. 165, 166, 78 L.Ed.2d 151 (1983). *See also United States v. Clemons,* 843 F.2d 741, 743 (3d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988). The fact is that the attorney was simply asked to object if it appeared that the prosecutor, a public official, was carrying out her duties in a racially prejudicial manner. Furthermore, the Supreme Court had long held that a state denies equal protection of the laws when a black is put on trial before a jury from which blacks are purposefully excluded. *See Batson,* 476 U.S. at 84–85, 106 S.Ct. at 1716. In fact, various states before this trial had applied versions of what became the *Batson* rule. *Batson,* 476 U.S. at 98–99, 106 S.Ct. at 1724. Accordingly, even discounting for our advantage of hindsight, we think that an attorney prior to *Batson* should not have been startled at the suggestion that the Supreme Court would hold the practice of prosecutors to challenge peremptorily jurors on racial grounds to be unconstitutional.

■ We emphasize, of course, that we are not holding that the trial attorney could be held to be ineffective if she had not on her own, even if she had known that *Batson* was pending, failed to object to the prosecutor's challenges as we do not reach that issue. It is the fact that she failed to honor Forte's quite reasonable request that she make an objection to preserve his rights under a case then pending in the Supreme Court that has led us to conclude that, assuming the allegations in his motion to be true, she was ineffective. Thus, our holding is very narrow and this opinion should not be broadly read. We also has-

ten to add that we do not imply that any time a trial attorney does not carry out her client's request she may be held to be ineffective. We are well aware that sometimes defendants make demands on their attorneys to advance insubstantial or even scandalous contentions and that even advancing a contention not of that character might not be sound trial strategy. Here, however, the case is extraordinary on the facts and Forte's request for a *Batson* objection was quite reasonable.

■ The second prong of the *Strickland* analysis of whether an attorney was ineffective requires us to determine if but for the attorney's error the result of the proceeding probably would have been different. We can be quite confident as to what would have happened had the *Batson* objection been made. At a bail hearing following Forte's conviction substituted counsel raised the peremptory challenges matter. The judge then said the following:

As it is the law with peremptory challenge, the Court is not to inquire of counsel why they are making the peremptory choice, and I did not, nor did counsel for the defendant, because that counsel well knows as Mr. Joseph well knows that it is common practice in this district, much to my embarrassment and dismay, that they're always striking caucasian people from these trial juries, but that is a common practice here. Now, it may be that they are stricken for reasons other than race. But since I cannot inquire, I have never and will never, unless directed to do so by higher authority.[2]

Thus, while ordinarily there will be a large element of speculation in determining after the fact what a judge might have ruled if an objection had been made, we have no doubt that any objection to the peremptory challenges would have been unsuccessful and the prosecutor would not have been compelled to state her reasons for the challenges. Accordingly, we know that the trial attorney's ineffectiveness had no im-

---

**2.** Joseph was Forte's attorney at the bail hearing, not at the trial. In fairness to the United States Attorney we point out that the judge was

probably referring to defense attorneys excusing white persons.

pact on the result at the trial. *See also United States v. Canel*, 569 F.Supp. at 932–33.

But we do not end our analysis at the trial for we think it also clear that had the objection been made Forte would have been successful on his direct appeal in having the matter remanded for a determination of whether there had been a *Batson* violation. When we rejected Forte's *Batson* claim we did so because he had not preserved it, not because it was meritless. Certainly Forte showed on his first appeal and continues to show that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove members of his group from the jury. In these circumstances there is an inference of purposeful discrimination and thus if *Batson* had been applied on the direct appeal we would have required the prosecutor to come forward with a neutral explanation for challenging white jurors. 476 U.S. at 97–98, 106 S.Ct. at 1723. While we realize that ordinarily the *Strickland* principles are advanced when the contention is made that the trial cannot be relied upon to have produced a just result, we see no logical reason why they should not be applicable when the defendant was denied a just result on appeal because of the ineffectiveness of his attorney at the trial.[3]

We recognize that the usual case of discrimination by prosecutors in jury selection involves the excusing of black jurors when defendants are black for in most areas within United States judicial jurisdiction whites outnumber blacks and thus it is blacks who are victimized by unconstitutionally exercised peremptory challenges. But we will not read *Batson* to make a distinction between white and black defendants. Defendants of both groups are entitled to trial before juries from which members of their race are not excluded as the result of purposeful discrimination by the prosecutor. *See Roman v. Abrams*, 822

F.2d 214, 227–28 (2d Cir.1987). We cannot hold that a white defendant convicted by a jury selected in a racially discriminatory manner should be satisfied with the knowledge that it is usually blacks who are unfairly treated and therefore may be denied relief himself. We would be no more justified in looking at the jury selection process on an overall rather than individual basis than was Forte's trial attorney. Thus, we now hold what we assumed *arguendo* in *United States v. DiPasquale*, 864 F.2d 271 (1988), that *Batson* applies to both whites and blacks.

In reaching our conclusion that Forte would have obtained relief on his direct appeal if he had preserved the challenges issue we acknowledge that the prosecutor on that appeal would have been free to argue that *Batson* should not be applied to cases tried prior to the Supreme Court ruling as the prosecutor had relied on pre-*Batson* law in making challenges. We will not linger on this possibility because within two months of our decision on Forte's direct appeal, the Supreme Court in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), held that *Batson* would be applied to criminal cases pending on direct appeal. In any event we have no doubt that in the period between *Batson* and *Griffith* the judges of this court would not have sustained a conviction returned by a jury selected in a racially discriminatory way because of the prosecutor's reliance on prior law. Finally, the record in this case shows that Forte, through retained attorneys, has gone all out in his defense. Thus, in the unlikely event that we had not applied *Batson*, if the peremptory challenge issue been properly preserved, Forte surely would have sought relief from the Supreme Court and, in the light of *Griffith v. Kentucky*, it is likely that he would have obtained it. We therefore conclude that Forte's trial attorney's performance was

---

**3.** Forte asserts that all four white jurors were peremptorily excused by the prosecutor. The prosecutor accepts this argument for purposes of the appeal but nevertheless indicates that it is the recollection of the prosecutor who tried the case that one white female served on the jury. Of course, even if the prosecutor is correct our result is not affected. *See United States v. Clemons*, 843 F.2d at 747.

unreasonable under prevailing professional standards and prejudiced his direct appeal.

Inasmuch as the trial attorney's representation was shown in the motion to be ineffective, the judge abused his discretion when he summarily denied the motion without a hearing. We point out, however, that Forte may not necessarily be entitled to have his conviction and sentence vacated even if he does establish at a hearing that he had an ineffective trial attorney. *Batson*, after all, does not per se preclude a prosecutor from using peremptory challenges to excuse jurors of a defendant's race. It simply shifts the burden to the prosecutor to come forward with a neutral explanation for the challenges. 476 U.S. at 98–99, 106 S.Ct. at 1723–24. Conceivably, the prosecutor may be able to articulate a neutral explanation for the challenges and the court may conclude that Forte has not established purposeful discrimination. In that event the ineffectiveness of his trial attorney should not result in his conviction being vacated for if it did Forte would be better off than if the trial attorney had objected to the prosecutor's use of her peremptory challenges. Thus, if there was a Sixth Amendment violation the remedy will be to give Forte what he should have gotten in the first place, an explanation from the prosecutor as to why she used her peremptory challenges and a ruling by the court on whether Forte has established that there was purposeful discrimination. Of course, if the court concludes that there was a Fourteenth Amendment violation his conviction and sentence will be vacated.

The order of April 12, 1988 will be reversed and the matter will be remanded to the District Court of the Virgin Islands for further proceedings consistent with this opinion. In the light of the exceptionally strong showing in Forte's papers, particularly the convincing letter by Alan Ellis, the proceedings on the remand should be expedited.